Matter of Morales (New York State Dept. of Corr. & Community Supervision) (2021 NY Slip Op 01459)





Matter of Morales (New York State Dept. of Corr. & Community Supervision)


2021 NY Slip Op 01459


Decided on March 11, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 11, 2021

530470

[*1]In the Matter of Samuel Morales, Appellant,
New York State Department of Corrections and Community Supervision, Respondent.

Calendar Date: January 6, 2021

Before: Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.


Lippes Mathias Wexler Friedman LLP, Albany (Emily G. Hannigan of counsel), for appellant.
Letitia James, Attorney General, Albany (Joseph M. Spadola of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (Nichols, J.), entered November 6, 2019 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent denying petitioner a two-year leave of absence pursuant to Civil Service Law § 71.
Petitioner was employed as a correction sergeant at Ulster Correctional Facility. On November 19, 2017, an inmate housed in that facility refused to cooperate with a pat-frisk search involving another correction officer. Petitioner observed the inmate punch the correction officer and ran to provide assistance. The inmate attempted to punch petitioner, but missed. Petitioner was injured in the ensuing melee. As a result of the altercation, petitioner sustained injuries to his left foot, ankle and toes and his right knee and elbow, and was later diagnosed with a left foot fracture. Due to his injuries, petitioner was placed on workers' compensation leave on November 20, 2017 and has remained out of work.
In October 2018, respondent notified petitioner that, pursuant to Civil Service Law § 71, his employment would be terminated effective November 21, 2018, as his leave of absence at that point would have exceeded one cumulative year. Petitioner thereafter objected to the termination, arguing that he was assaulted and therefore eligible for a two-year leave of absence. Despite his objection, petitioner's employment was terminated on November 21, 2018. Following his termination, petitioner commenced this CPLR article 78 proceeding challenging the determination denying him a two-year leave of absence and seeking reinstatement of his employment. Respondent answered, arguing that petitioner failed to state a cause of action pursuant to CPLR 3211 (a) (7). Supreme Court dismissed the petition, and this appeal ensued.
Petitioner asserts that he was assaulted by the inmate and is therefore entitled to a two-year leave of absence pursuant to Civil Service Law § 71. Civil Service Law § 71 provides, in pertinent part, that "where an employee has been separated from the service by reason of a disability resulting from an assault sustained in the course of his or her employment, he or she shall be entitled to a leave of absence for at least two years." The term assault is not defined under this statute, but we have recently held that the definition employed by respondent is rational, to wit, "an intentional physical act of violence directed towardan employee by an inmate or parolee" (Matter of Froehlich v New York State Dept. of Corr. & Community Supervision, 179 AD3d 1408, 1410 [2020] [internal quotation marks and brackets omitted; emphasis added], appeal dismissed 35 NY3d 1031 [2020]; see Matter of Maloy v New York State Dept. of Corr. & Community Supervision, 188 AD3d 1428, 1429 [2020]; Matter of Dunson v New York State Dept. of Corr. & Community Supervision, 188 AD3d 1390, 1391-1392 [2020]). These three cited cases also found that, [*2]under the particular facts of each case, an assault, as defined by respondent, did not occur and, as such, the denial by respondent of extended leave was neither arbitrary nor capricious (see Matter of Maloy v New York State Dept. of Corr. & Community Supervision, 188 AD3d at 1429; Matter of Dunson v New York State Dept. of Corr. & Community Supervision, 188 AD3d at 1392; Matter of Froehlich v New York State Dept. of Corr. & Community Supervision, 179 AD3d at 1411).
A close examination of these three cases reveals substantive distinctions from the instant case, making clear that Supreme Court's judgment must be reversed. To that end, the petitioner in Froehlich, a correction officer, tried to restrain a parolee who was "attempting to swallow" contraband (Matter of Froehlich v New York State Dept. of Corr. & Community Supervision, 179 AD3d at 1409). Notably, although the correction officer was injured, we found that there was no "indication that the parolee directed any intentional physical act of violence toward [the] petitioner before, during or after [the] petitioner's application of the body hold" (id. at 1411 [emphasis added]). Similarly, in Dunson, the petitioner, a correction officer, was injured while attempting to place handcuffs on an inmate. There, we determined that, "although there is evidence that the inmate intentionally struck another correction officer during the course of the physical altercation, there is no indication that the inmate intended to assault [the] petitioner" (Matter of Dunson v New York State Dept. of Corr. & Community Supervision, 188 AD3d at 1392 [emphasis added]). Finally, in Maloy, the petitioner, a correction officer, was injured while attempting to extinguish a fire that was set by an inmate, who was being restrained. Relying on Froehlich, we found no "indication that the inmate here intended to inflict physical injuries on [the] petitioner" and concluded that respondent's determination was not arbitrary, capricious or irrational (Matter of Maloy v New York State Dept. of Corr. & Community Supervision, 188 AD3d at 1429).
The distinction in the instant case cannot be ignored — here, the inmate swung at petitioner, a factor notably absent in the aforementioned cases. Moreover, the fact that the punch missed has no bearing because, under respondent's own definition of assault, it would be unreasonable to claim that throwing a punch at petitioner was anything other than "an intentional physical act of violence directed toward an employee by an inmate or parolee" (Matter of Froehlich v New York State Dept. of Corr. & Community Supervision, 179 AD3d at 1410 [internal quotation marks and brackets omitted]). Notably, respondent's own definition does not include a contact requirement (see e.g. Silipo v Wiley, 138 AD3d 1178, 1182 [2016]; Holland v City of Poughkeepsie, 90 AD3d 841, 846 [2011]), and we decline the opportunity to further narrow the applicable definition of assault.
Finally, we note that the [*3]statute includes a general element of causation covering "disability resulting from an assault" (Civil Service Law § 71 [emphasis added]). However, it does not carry a more specific requirement, such as "directly caused by the" assault, and we similarly decline to further restrict and limit this remedial legislation (see Sponsor's Mem, Bill Jacket, L 2003, ch 577 [emphasis added]). Based on the foregoing, respondent's choice to reject the extended leave of absence was "arbitrary and capricious, irrational, [and] affected by an error of law" (Matter of Buffalo Teachers Fedn., Inc. v Elia, 162 AD3d 1169, 1172 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 915 [2019]). In particular, although "the construction given statutes and regulations by the agency responsible for their administration will, if not irrational or unreasonable, be upheld" (Matter of Aides At Home, Inc. v State of N.Y. Workers' Compensation Bd., 76 AD3d 727, 727-728 [2010] [internal quotation marks and citation omitted]), respondent's determination was premised on an error of law inasmuch as it misconstrued the term assault to erroneously narrow its meaning even further than its own definition allows. Further, since our prior jurisprudence is distinguishable, and thus not controlling under this fact pattern, Supreme Court's judgment must be reversed.
Egan Jr., J.P., Pritzker and Colangelo, JJ., concur.
Aarons, J. (dissenting).
I respectfully dissent. In my view, respondent's determination that petitioner did not sustain a disability as a result of an assault as provided by Civil Service Law § 71 was neither arbitrary and capricious nor irrational. Accordingly, Supreme Court correctly dismissed the petition.
The record discloses that petitioner came to the aid of another correction officer who had been punched by an inmate. While doing so, the inmate threw a closed fist punch at petitioner but missed. Petitioner was able to restrain the inmate to the ground and, in the course of doing so, sustained various injuries. Petitioner commenced this proceeding challenging the determination that denied him a two-year leave of absence. Petitioner alleged that he was separated from his employment due to a disability resulting from an assault.
An employee shall be entitled to a leave of absence of at least two years if such employee "has been separated from the service by reason of a disability resulting from an assault sustained in the course of his or her employment" (Civil Service Law § 71 [emphasis added]). Although petitioner challenges respondent's definition of an assault, we have held that its definition — i.e., "an intentional physical act of violence directed toward an employee by an inmate or parolee" — was "entirely rational" (Matter of Froehlich v New York State Dept. of Corr. & Community Supervision, 179 AD3d 1408, 1410 [2020] [internal quotation marks and brackets omitted], appeal dismissed 35 NY3d 1031 [2020]).
I agree with the [*4]majority that the attempted punch directed at petitioner would fall within respondent's definition of an assault. My divergence stems from the fact that petitioner's disability did not result from this assault. The attempted punch was part and parcel of the overall events at issue but, other than precipitating the restraint of the inmate, it had no connection to petitioner's injuries. Indeed, there is no indication that petitioner was injured while trying to evade the punch from the inmate. To the contrary, petitioner explained in the employee incident report that he, "while trying to control a[n] inmate[,] went to the ground hurting my right knee and my left foot, and right elbow." Stated differently, petitioner did not injure himself as a result of the attempted punch by the inmate. Rather, petitioner injured himself while restraining the inmate. For this reason, the trio of cases that the majority concludes to be distinguishable are, in my view, controlling (see Matter of Maloy v New York State Dept. of Corr. & Community Supervision, 188 AD3d 1428, 1429 [2020]; Matter of Dunson v New York State Dept. of Corr. & Community Supervision, 188 AD3d 1390, 1391-1392 [2020]; Matter of Froehlich v New York State Dept. of Corr. & Community Supervision, 179 AD3d at 1410-1411).
Because petitioner's disability did not result from the alleged assault as required by Civil Service Law § 71 for a leave of absence of at least two years, I would affirm.
ORDERED that the judgment is reversed, on the law, without costs, and petition granted.